IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BLAKE LEWIS**                                                                       **PLAINTIFF**

v.                                                        CIVIL ACTION NO.: 3:25cv323-HTW-LGI

**ENTERGY MISSISSIPPI, LLC**                                                 **DEFENDANT**

## COMPLAINT
### JURY TRIAL DEMANDED

**COMES NOW** Plaintiff, Blake Lewis, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages for violations of his rights pursuant to Title VII of the Civil Rights Act of 1964 for race discrimination, violation of his rights pursuant to 42 U.S.C. § 1981 for race discrimination against the Defendant, Entergy Mississippi, LLC. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

1. Plaintiff, Blake Lewis, is a male resident of Rankin County, Mississippi.

2. Defendant, Entergy Mississippi, LLC, may be served with process by serving its registered agent, Steven T. Gray, 308 East Pearl Street, Jackson, Mississippi 39201.

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

4. This Court has subject matter jurisdiction and venue is proper in this Court.

5. Plaintiff filed a Charge of Discrimination with the EEOC on February 1, 2025, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on February 7, 2025, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right

to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 31-year-old white male resident of Rankin County and Florence, Mississippi.

7. Plaintiff was hired on January 29, 2019, as a Journeyman Lineman at Entergy Mississippi, LLC (EM).

8. During late April 2024, Plaintiff was talking with Apprentice Lineman Reggie Clark (black male).

9. They were talking about Brazilian nuts and Plaintiff mentioned that his grandfather used to refer to them as "black toes".

10. At the time, neither Plaintiff nor Mr. Clark considered the conversation remarkable.

11. On the morning of June 6, 2024, Plaintiff, Mr. Clark, and another Journey Lineman, Brandon Dyess (white male) were at a law enforcement academy.

12. Mr. Dyess prompted one of his friends at the academy, a law enforcement officer, to playfully confront Mr. Clark, i.e., saying, "What are you doing here?"

13. The prank did not last long and after a few minutes Mr. Dyess and the officer revealed they were playfully pranking Mr. Clark.

14. Mr. Clark was a good sport and was not threatened or bothered by the prank.

15. Later that same day, June 6, 2024, Plaintiff, Mr. Dyess, and Mr. Clark all went to a job site.

16. They worked for several hours at the site.

17. When they completed their work at the site, Plaintiff, Mr. Dyess, Mr. Clark, and Journeyman Lineman Harper Farrell (white male) were releasing the clearance.

18. As they were doing this, they realized that Foreman Hunter Holiday (white male) and Journeyman Lineman Jeremy Polk (white male) had removed the grounds without notifying the clearance holder, i.e., Mr. Dyess.

19. This meant that there had been no protection while Plaintiff, Mr. Dyess, Mr. Clark, and Mr. Farrell had been performing hands-on work.

20. This constituted a severe safety violation, i.e., severe enough that someone could have been killed and should be reported to OSHA.

21. It is noteworthy that when he left the worksite and he turned onto Airport Road, Mr. Holiday had a clear line of sight to see where Plaintiff, Mr. Dyess, Mr. Clark, and Mr. Farrell were still working at the primary.

22. There is no credible way Mr. Holiday could claim he did not know they were still working there.

23. Plaintiff and Mr. Dyess were shaken by the incident.

24. After several days, they decided that due to the significant violation of safety of the incident, they were duty bound to report it.

25. On June 10, 2024, Plaintiff and Mr. Dyess reported the safety violation to the EM Ethics Department and EM's Safety Team and Superintendent David Posey.

26. After that, the Safety Team conducted an investigation.

27. During the Safety Team's interview with Mr. Dyess, Safety Team Supervisor Gary Burris stated that Mr. Holiday and Mr. Polk broke a safety violation by removing the grounds without permission from the clearance holder, i.e., Mr. Dyess.

28. After the investigation was completed, however, Plaintiff and Mr. Dyess never heard anything more about the matter.

29. It appears nothing was done to address the situation, and the matter was not

escalated.

30. Mr. Holiday and Mr. Polk were neither terminated nor even disciplined despite their responsibility for the severe safety violation.

31. During the month of August at EM, new apprentices (i.e., Apprentice Linemen) are typically rotated in and out.

32. During the early part of August 2024, Apprentice Linemen Reggie Clark (black male), Reco Richardson (black male), and Zach Sayles (black male) left EM and a new Apprentice Lineman, RJ Baptiste (black male) started at EM.

33. An outage was planned for August 29, 2024, so Mr. Baptiste was going to work with Mr. Dyess, Mr. Farrell, and Journeyman Lineman Darren Cox (white male).

34. Still during early August 2024, Operations Coordinator Will Graves (black male) and Mr. Holiday approached Mr. Baptiste and told him that Mr. Dyess was a racist and that if Mr. Dyess said anything to offend him (Mr. Baptiste), he should let them know and they would pursue it as racism.

35. Mr. Graves and Mr. Holiday attempted to persuade Mr. Baptiste to provide them with any information he obtained so they could build a case against Mr. Dyess.

36. Mr. Dyess learned about this because after Mr. Baptiste worked with Mr. Dyess for a couple weeks, Mr. Baptiste approached Mr. Dyess and told him what Mr. Graves and Mr. Holiday had said to him (Mr. Baptiste).

37. Mr. Baptiste further noted that he believed Mr. Graves' and Mr. Holiday's intentions were malicious against Mr. Dyess because he (Mr. Baptiste) felt respected by Mr. Dyess and did not believe that Mr. Dyess was racist at all.

38. On August 20, 2024, Operations Coordinator Will Graves (black male) made allegations of race discrimination against Plaintiff and Mr. Dyess to the Ethics department.

39. Mr. Graves alleged that the incident in late April 2024 (i.e., when Plaintiff told Mr. Clark that his (Plaintiff's) grandfather referred to Brazilian nuts as "black toes") and the incident on the morning of June 6, 2024 (i.e., when Mr. Dyess's friend, a law enforcement officer, pranked Mr. Clark by sternly asking him, "What are you doing here?") represented race discrimination.

40. EM claimed they would conduct an investigation to address these allegations by Mr. Graves.

41. During the investigation, both Plaintiff and Mr. Dyess stated that neither of these incidents represented race discrimination, nor have they at any time racially discriminated/harassed anyone while working at EM.

42. Moreover, during the investigation Mr. Clark indicated that he did not feel racially harassed or discriminated against by either of the incidents in question; not during the incidents in question and at no point during his tenure working together with Plaintiff and Mr. Dyess.

43. On November 12, 2024, Superintendent David Posey informed Plaintiff and Mr. Dyess that they were terminated, allegedly "as a result of the ethics investigation".

44. On the evening of November 12, 2024, former EM employee Michael Brown had a phone call with Mr. Posey.

45. During that phone call, Mr. Posey explained to Mr. Brown that the terminations of Plaintiff and Mr. Dyess were not due to race discrimination, but rather the upper Entergy management in New Orleans wanted them terminated because they had reported the safety violation on June 10, 2024, against EM management, i.e., Mr. Holiday.

46. Mr. Posey further explained to Mr. Brown that prior to November 11, 2024, he (Mr. Posey) assumed that Plaintiff and Mr. Dyess were only going to be placed on

5

unpaid leave for 40 hours (i.e., one week).

47. However, on November 11, 2024, at 7pm, Mr. Posey received a phone call from Vice President of Reliability Shawn Corkran and was instructed to terminate Plaintiff and Mr. Dyess because they reported the safety violation.

48. Mr. Corkran informed Mr. Posey that the decision to terminate Plaintiff and Mr. Dyess was made by the Entergy management in New Orleans.

49. Plaintiff and Mr. Dyess adamantly contend that these allegations of race discrimination are false and a pretext for retaliation against them after they reported the severe safety violation of June 6, 2024.

50. Plaintiff further contends that EM racially discriminated against him in that it used race discrimination as the pretext for terminating him when Mr. Clark (the black male involved in the alleged incidents) denied that he felt racially discriminated against during the alleged incidents or at any other time during his tenure working alongside Plaintiff.

51. Plaintiff argues that EM racially discriminated against him (Plaintiff) by using this frivolous pretext as its basis for terminating him.

52. On February 1, 2025, Plaintiff filed an EEOC Charge of race discrimination against EM.

53. During January 2025, Plaintiff filed a complaint of retaliation with the Occupational Safety and Health Administration (OSHA).

54. On March 18, 2025, in response to Plaintiff's filed complaint to OSHA, EM submitted a Position Statement to OSHA.

55. The position statement responded to the collective complaints of Plaintiff and Mr. Brandon Dyess.

56. EM's Position Statement alleges that, "Complainants' claims are false, and the fanciful allegations they offer in support of their Complaints are based completely on illogical double-hearsay that has no probative value,3 is inconsistent with EML's extensive safety record, and irreconcilable with basic common sense. EML denies retaliating against Dyess or Lewis in any way. The Company had a clear, undisputed, legitimate, and non-retaliatory reason for terminating Dyess' and Lewis' employment, namely their admitted conduct in direct violation of the Company's rules and policies prohibiting discrimination, retaliation, harassment, and bullying."

57. Plaintiff contends this allegation is false, as will be further explained below.

58. EM's Position Statement alleges that, "In June 2024, Dyess and Lewis followed Entergy's Policy and lodged complaints with the Company Ethics Line. See Exhibit F. Holiday was the target of their complaints. Contrary to the revised history presented in the Complaints, the June 2024 Ethics Line complaints were not focused on an alleged "severe safety violation," but rather on the contention that Holiday was attempting to sabotage Dyess, harassing him, and as a result, creating a hostile work environment. [Id.] Consistent with its commitments above, Entergy investigated Complainants' allegations but did not substantiate the allegations of sabotage or a hostile work environment. [Id.] The investigation did, however, substantiate Holiday's violation of Company safety rules. [Id.] This stands in contrast to the Complainants' conclusory allegation in an effort to create the impression for OSHA that the Company did nothing and potentially even hid unsafe conduct or protected Holiday from consequence."

59. Plaintiff contends this allegation mischaracterizes the events that occurred.

60. He maintains, as explained above, that on June 10, 2024, Plaintiff and Mr. Dyess reported the safety violation to the EM Ethics Department and EM's Safety Team

7

and Superintendent David Posey.

61.     After that, the Safety Team conducted an investigation.

62.     During the Safety Team's interview with Mr. Dyess, Safety Team Supervisor Gary Burris stated that Mr. Holiday and Mr. Polk broke a safety violation by removing the grounds without permission from the clearance holder, i.e., Mr. Dyess.

63.     Notably, Exhibit F, EM's Internal Investigation Report, states that the allegation that "James Holiday violated a safety rule which caused Brandon Dyess' crew to perform work after the grounds were removed" was found to be "substantiated".

64.     This was the "severe safety violation" that was referred to in Plaintiff's complaint to DOL/OSHA.

65.     Furthermore, as explained above, after the investigation was completed, Plaintiff and Mr. Dyess never heard anything more about the matter.

66.     It appears nothing was done to address the situation, and the matter was not escalated.

67.     Mr. Holiday and Mr. Polk were neither terminated nor even disciplined despite their responsibility for the severe safety violation.

68.     EM's Position Statement alleges that, "Sometime in or around late August 2024, Dyess had a conversation with Operations Coordinator of the Rankin Network, Will Graves ("Graves"). During that conversation, Dyess shared with Graves that earlier in the year, he had attempted to prank an apprentice lineman assigned to his crew5 by involving a law enforcement officer to intimidate that lineman while the crew was on Company time and working at a job site. In addition, Dyess shared an incident where Lewis had picked on the same apprentice lineman by questioning him about a subject with serious negative racial overtones.6 Graves was taken aback by Dyess' cavalier attitude regarding the

treatment of an apprentice lineman, especially by a senior lineman. Graves shared his concerns with Superintendent of the Rankin Network, David Posey ("Posey"), and subsequently reported those concerns to the Ethics Line."

69. Plaintiff contends this allegation is false and misleading, as will become evident with the following context:

70. During late April 2024, Plaintiff was talking with Apprentice Lineman Reggie Clark (black male).

71. They were talking about Brazilian nuts and Plaintiff mentioned that his grandfather used to refer to them as "black toes".

72. At the time, neither Plaintiff nor Mr. Clark considered the conversation remarkable.

73. The statement was the equivalent of saying, 'racism occurred in the past', but it was both stated and received as a statement of historical past, not intended in any way to discriminate or harass.

74. During the month of August at EM, new apprentices (i.e., Apprentice Linemen) are typically rotated in and out.

75. During the early part of August 2024, Apprentice Linemen Reggie Clark (black male), Reco Richardson (black male), and Zach Sayles (black male) left EM and a new Apprentice Lineman, RJ Baptiste (black male) started at EM.

76. An outage was planned for August 29, 2024, so Mr. Baptiste was going to work with Mr. Dyess, Mr. Farrell, and Journeyman Lineman Darren Cox (white male).

77. Still during early August 2024, Operations Coordinator Will Graves (black male) and Mr. Holiday approached Mr. Baptiste and told him that Mr. Dyess was a racist and that if Mr. Dyess said anything to offend him (Mr. Baptiste), he should let them know

9

and they would pursue it as racism.

78. Mr. Graves and Mr. Holiday attempted to persuade Mr. Baptiste to provide them with any information he obtained so they could build a case against Mr. Dyess.

79. Mr. Dyess learned about this because after Mr. Baptiste worked with Mr. Dyess for a couple weeks, Mr. Baptiste approached Mr. Dyess and told him what Mr. Graves and Mr. Holiday had said to him (Mr. Baptiste).

80. Mr. Baptiste further noted that he believed Mr. Graves' and Mr. Holiday's intentions were malicious against Mr. Dyess because he (Mr. Baptiste) felt respected by Mr. Dyess and did not believe that Mr. Dyess was racist at all.

81. On August 20, 2024, Operations Coordinator Will Graves (black male) made allegations of race discrimination against Plaintiff and Mr. Dyess to the Ethics department.

82. Mr. Graves alleged that the incident in late April 2024 (i.e., when Plaintiff told Mr. Clark that his (Plaintiff's) grandfather referred to Brazilian nuts as "black toes") and the incident on the morning of June 6, 2024 (i.e., when Mr. Dyess's friend, a law enforcement officer, pranked Mr. Clark by sternly asking him, "What are you doing here?") represented race discrimination.

83. EM claimed they would conduct an investigation to address these allegations by Mr. Graves.

84. During the investigation, both Plaintiff and Mr. Dyess stated that neither of these incidents represented race discrimination, nor have they at any time racially discriminated/harassed anyone while working at EM.

85. Moreover, during the investigation Mr. Clark indicated that he did not feel racially harassed or discriminated against by either of the incidents in question; not during the incidents in question and at no point during his tenure working together with Plaintiff

10

and Mr. Dyess.

86. EM's Position Statement alleges that, "The Company investigated Graves' concerns and substantiated that Dyess and Lewis had engaged in the conduct alleged. Exhibit G. During the investigation, Dyess and Lewis admitted the violative conduct but, as they do in their Complaints, attempted to excuse their actions by claiming the apprentice lineman—essentially their subordinate trainee—"didn't mind" how they treated him.7 [Id.] After substantiating Complainants' serious violations of Company policy, in consultation with Human Resources, Former Vice President of Reliability, Shawn Corkran ("Corkran") decided to terminate their employment, effective November 12, 2024. Corkran informed Posey of the decision, and Posey relayed the decision to Complainants. Neither Posey, Graves, nor Holiday were involved in the decision itself."

87. Plaintiff contends this allegation is misleading and mischaracterizes the events that occurred.

88. First, the Internal Investigation that allegedly investigated this matter occurred in September 2024, after Mr. Graves, on August 20, 2024, made allegations of race discrimination against Plaintiff and Mr. Dyess to the Ethics department.

89. The event with Plaintiff speaking to Mr. Clark about "black toes" occurred in April 2024.

90. The report concludes that "Even though Mr. Clark was not offended, Mr. Clark's peer who heard the conversation was offended by the discussion."

91. This peer, who was allegedly offended, was John McGriff.

92. The report states that "Plaintiff was talking to Mr. Clark about what his grandfather called "Brazil Nuts."

93. Mr. McGriff said he heard Plaintiff say Brazil Nuts were called "Black Toes"

11

meaning "N-word toes."

94. Plaintiff adamantly contends that he referred to "black toes" but he did not use the N word at all.

95. That may well have been the term used by ancestors in the past, but it is not what Plaintiff said.

96. He used the term "black toes" precisely to avoid any offense.

97. As noted above, was the equivalent of saying, 'racism occurred in the past', but it was both stated and received as a statement of historical past, not intended in any way to discriminate or harass.

98. The report also states, "Mr. McGriff stated that he did not think that work was the appropriate place for the discussion, and he reported the matter to Mr. Posey and Mr. Graves the same day the incident occurred."

99. Notably, Mr. McGriff allegedly made this complaint to Mr. Posey and Mr. Graves "the same day the incident occurred" in April 2024.

100. If this is true, one might understandably wonder why Mr. Graves waited until August 20, 2024, to pursue a complaint of race discrimination.

101. The reason this allegation of race discrimination was even investigated was because in June 2024 Plaintiff and Mr. Dyess made their complaint of a serious safety violation against Mr. Holiday. However, Defendant used Plaintiff's race as the motivating factor to terminate Plaintiff since it had nothing else it could exaggerate to cause his termination.

102. After that, motivated by a desire to retaliate, Mr. Holiday influenced Mr. Graves to pursue race discrimination claims against Plaintiff and Mr. Dyess.

103. As noted above, in early August 2024, Mr. Holiday and Mr. Graves unsuccessfully attempted to persuade Mr. Baptiste that Mr. Dyess was a racist and to make false claims against him.

104. After Plaintiff was terminated he was replaced by a black male.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII - RACE DISCRIMINATION

105. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 104 above as if fully incorporated herein.

106. Defendant has discriminated against Plaintiff because of his race based on the facts identified above which constitutes a violation of Title VII.

107. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, axiety and emotional distress.

108. The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

### COUNT II: VIOLATION OF 42 U.S.C. § 1981 - RACE DISCRIMINATION

109. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 108 above as if fully incorporated herein.

110. The Defendant has discriminated against Plaintiff because of his race based on the facts identified above and is a violation of 42 U.S.C. § 1981.

111. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, anxiety and emotional distress.

112. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial.  Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1. Back wages;
2. Reinstatement or future pay in lieu of reinstatement;
3. Compensatory damages;
4. Punitive damages;
5. Attorney's fees;
6. Lost benefits;
7. Pre-judgement and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 5th  day of May 2025.

                                                           Respectfully submitted,

                                                           Blake Lewis, Plaintiff

                                                        By: /s Louis H. Watson, Jr.
                                                              LOUIS H. WATSON, JR.  (MB# 9053)
                                                              NICK NORRIS (MB# 101574)
                                                              Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, Mississippi 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com