**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BLAKE LEWIS**                                                                                 **PLAINTIFF**

**v.**                                                   **CIVIL ACTION NO.: 3:25-cv-323-HTW-ASH**

**ENTERGY MISSISSIPPI, LLC**                                                   **DEFENDANT**

### AFFIDAVIT OF JANE A. WATSON

1. My name is Jane A. Watson. I am over the age of eighteen years old. I state the following based upon my own personal knowledge and am competent to testify as to these matters.

2. I am currently a member of The Mississippi Bar (MSB #106877).

3. In the above-referenced matter, I was asked to write a motion response with an accompanying memorandum of authorities to respond to a Motion to Stay Proceedings.

4. In the year that I have been barred, I have not had any prior experience in drafting a response to a Motion to Stay Proceedings.

5. In order to better understand what was involved procedurally, I turned to a non-firm approved general AI service instead of searching through our firm's Westlaw subscription to assist me in drafting a response.

6. Our firm has a practice regarding AI, which entails that the use of AI is permitted, so long as the AI service is approved by the firm and all citations and representations included in such responses are checked for complete and total accuracy. In addition, the firm policy as explained to me was to use Westlaw's quick check feature to double check all citations.

7. Additionally, our firm policy encourages use of AI tools built into our firm's case management software, Smokeball, which is called "Archie."

8. Furthermore, I had previously attended along with my co-counsel a CLE back in March held by the National Employment Lawyers Association that discussed the shortcomings one may face when solely relying on AI. In the CLE, it was stressed that such citations needed to be checked in order to avoid such a problem like this one at hand.

9. My use of other AI tools was not authorized by the firm, and my co-counsel was unaware of my use of non-approved AI tools.

10. When responding to this matter's Motion to Stay Proceedings, I also had to respond to a similar one in another matter, *Dyess v. Entergy Mississippi, LLC*; Civil Action No.: 3:25-cv-326-CWR-ASH.

11. I used AI research to assist me in preparing my response in both the *Lewis* and *Dyess* matters; however, I worked on each of them over the weekend and thought I had checked over both responses to ensure their accuracy before filing. I clearly did not nor did I follow the firm's policy on using Westlaw's quick check to double check my work.

12. As pointed out by the Court, I reviewed the *Dyess* response; however, it is now apparent that I did not accurately check each citation for complete and total accuracy, nor did I use Westlaw's quick check feature as required.

13. As a result, the *Lewis* response had references to case law that were indeed fictitious. Additionally, the *Dyess* response contained a citation to *Fujita*, which was not accurate and should have been removed; however, I individually overlooked

2

that as well and failed to remove that incorrect citation.

14. I fully own that my insufficient review of output from AI does not reflect the requirements of this honorable Court nor the responsibilities I carry as a practicing attorney.

15. I utilized the AI output without sufficiently checking the output that the AI generated.

16. I believed that I had sufficiently checked the output in the *Dyess* response but clearly, I did not.

17. My failure to sufficiently review the AI generated output was not in conformance with firm policy.

18. I sincerely and undoubtedly regret my oversight and did not intend to submit any fictitious or inaccurate authority to the Court.

19. I take full responsibility for my insufficient review and failure to follow firm policy and will take every measure necessary to ensure that it absolutely will not happen again.

20. The requirements that my firm has now put into place to address this issue moving forward are:

A. I am no longer allowed to use AI of any kind.

B. I have been required to go through every previous filing along with my co-counsel to review each and each pleading for accurate citations and representations to the Court.

C. I am required to attend a CLE on Ethics in AI at my expense within the next 30 days.

  D. I am required to contact the client in this matter and explain exactly what happened and apologize to the client for my inexcusable actions.

  E. I have been directed to contact the Law School for the University of Mississippi where I graduated to make myself available to speak to law students to discuss the dangers of improper AI use and the ethical implications stemming from improper AI use.

  21. I certainly did not intend to misrepresent any legal authorities or provide false or misleading information to the Court; however, my insufficient review caused me to submit erroneous authorities to the Court.

  22. I fully understand the severity of the issue and fully and completely own my insufficient review of the output I regrettably utilized from AI.

  23. In the future, I will uphold the honorable principles of this Court and the Rules of Professional Conduct. Myself and my co-counsel will ensure that no situation like this happens again, and that all representations made in each and every filing complies with the rules of this Court and the Rules of Professional Conduct.

  24. In response to the Court's Order to Show Cause [22], I acknowledge and apologize unreservedly for the inaccuracies in the legal citations contained in Plaintiff's opposition brief [17].

  25. Specifically, the citations to *Matherne v. Cytec Corp.*, 78 F. App'x 977 (5th Cir. 2003), and *Von Drake v. Nat1 Sec. Agency*, 156 F.3d 181, 1998 WL 546172 (5th Cir. 1998), refer to non-existent cases, as the Court correctly identified through its independent research on Westlaw, LexisNexis, vLex Fastcase, and Google Scholar.

  26. Additionally, the characterization of *Fujita v. United States*, 416

Fed.Appx. 400 (5th Cir. 2011), incorrectly represented the holding as affirming the denial of a stay of discovery where discovery was necessary and the motion to dismiss was unlikely to succeed (at pages 2 and 4 of the brief), when in fact the Fifth Circuit affirmed the grant of a stay, finding good cause and no abuse of discretion.

27. These discrepancies resulted from my personal reliance on insufficiently verified output from generative artificial intelligence during the initial research and drafting process, and misrepresentations of case holdings. Undersigned counsel inputted queries related to Fifth Circuit precedent on stays of discovery pending motions to dismiss, and the AI-generated responses included these fabricated or distorted authorities without clear indication of their unreliability.

28. As previously stated above, I did not independently verify each citation through the primary source available to me, Westlaw, prior to filing, relying instead on a cursory review that failed to detect the errors. This was an oversight that falls short of the diligence required under Fed. R. Civ. P. 11(b) (requiring reasonable inquiry into the legal contentions), Mississippi Rule of Professional Conduct 3.3(a)(1) (prohibiting knowingly making false statements of law to a tribunal), and Local Rule 83.1(c)(1) (incorporating state ethical rules). This failure stemmed from an over-reliance on AI as an information-providing tool, without adequate safeguards, and not from any deliberate attempt to deceive. However, it is clear that my verification step was inadequate, leading to these issues. As such, this incident has prompted immediate remedial action by all attorneys in the law firm, including myself.

29. Our firm has since implemented stricter verification protocols, including mandatory manual checks of all citations, to prevent recurrence. No intent to mislead

5

the Court existed in this matter; these errors reflect a good-faith mistake in adopting emerging AI-assisted research methods without sufficient caution, rather than a willful violation of the Court's inherent authority. I take full responsibility and am committed to upholding the highest standards of candor and diligence moving forward.

30. Aside these citation errors, the substantive legal arguments in the brief, which include that stays of discovery pending a motion to dismiss are disfavored when discovery is necessary to resolve factual disputes and the motion is unlikely to dispose of the case, remain valid and are supported by Fifth Circuit authority.

31. For transparency, undersigned counsel notes that the following cases are published and precedential, and they illustrate the application of principles that align with the propositions advanced in the brief. These accurate authorities, verified through Westlaw post-filing, confirm that the brief's positions were meritorious and not frivolous, even if the original citations were flawed. The errors were isolated to the citations and did not undermine the good-faith basis for the arguments under Rule 11.

32. The proposition that stays are inappropriate when discovery is needed to advance the case and the dispositive motion is not dispositive is consistent with *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987), where the Fifth Circuit affirmed a stay of discovery pending a Rule 12(b)(6) motion, holding that a trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined, but that the stay was proper in that instance only because nothing that the plaintiff could have learned through discovery could have affected the resolution of the motion. 833 F.2d at 583. By negative implication, this principle illustrates that stays may be unwarranted where, as argued in the brief,

6

discovery is essential to resolve factual disputes central to Plaintiff's race discrimination claims, which include factors such as exploring Defendant's investigation, motives, and disparate treatment, and the motion to dismiss turns on those disputes rather than pure legal deficiencies that would render discovery irrelevant.

33. Similarly, in *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404 (5th Cir. 1990), the Fifth Circuit affirmed a protective order under Rule 26(c) staying discovery pending summary judgment motions, but emphasized that such orders require a prima facie showing of good cause (e.g., undue burden and expense on the movant), after which the burden shifts to the non-movant to demonstrate need. 901 F.2d at 436. The court implied a balancing of factors, including whether the dispositive motion might resolve the case (potentially avoiding unnecessary discovery), the burden on the defendant, and the non-movant's need for the information to oppose the motion. *Id*. Stays are appropriate where, after this balancing, the motion has apparent substantial grounds and discovery would be unduly burdensome. Although Landry involved summary judgment rather than a motion to dismiss, its Rule 26(c) standard applies analogously here. This supports the view that a stay would be unwarranted in this case, given the motion's low likelihood of success, the necessity of discovery to resolve disputed issues, and the unfair prejudice to Plaintiff from delaying redress.

34. The brief's argument that a district court abuses its discretion by imposing a stay that significantly prejudices the plaintiff is well-grounded in Fifth Circuit precedent on stays of discovery. In *Petrus v. Bowen*, 833 F.2d at 583, the Fifth

7

Circuit's holding that the stay was proper because discovery could not affect the motion's outcome suggests, by negative implication, that deferring discovery may constitute an abuse of discretion when it is necessary to advance the case and resolve disputed issues, as the brief argued in this fact-intensive discrimination suit where the motion to dismiss is unlikely to succeed.

35. Likewise, in *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990), the Fifth Circuit affirmed a Rule 26(c) protective order staying discovery pending summary judgment, holding that movants met their burden to show the discovery 'would be unduly burdensome and expensive,' and non-movants 'failed to show need.' *Id*. The court implied a burden-shifting framework, noting stays serve judicial economy by resolving motions that 'might preclude the need for the discovery altogether thus saving time and expense.' *Id*. This supports the view that stays may be inappropriate where movants fail to show undue burden or non-movants demonstrate need to avoid prejudice from delay, aligning with the brief's position against a stay here given the motion's low merit and proportionate discovery burden.

36. Since this show-cause order, I have meticulously gone back and reviewed all filings to ensure their accuracy, and plan to file Motion for Leave to Correct such issues. From here on out, I have learned my lesson and the firm has prohibited me from using AI of any kind to enhance my research. I understand the severity of the issue, and will ensure that no confusion or credibility is of concern in the future. I will make sure that every case I cite is accurate and what I contend it stands for is correct.

37.     For these reasons, while I unable to demonstrate good cause for my insufficient review of and submission of AI generated output to this Court, I humbly ask the Court for forgiveness and mercy.  I also request that my co-counsel not be sanctioned as they had no knowledge of my disregard of firm policy regarding use of AI generated output and double checking all citations through Westlaw's quick check.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the above and foregoing is true and correct as therein stated.

Further Affiant saith not.

Executed, this the 12th day of September, 2025.

*Jane A. Watson*
_____
JANE A. WATSON