**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BLAKE LEWIS**                                                                                    **PLAINTIFF**

**vs.**                                                        **CIVIL ACTION No.: 3:25-CV-323-HTW-ASH**

**ENTERGY MISSISSIPPI, LLC**                                                    **DEFENDANT**

**ORDER**

BEFORE THIS COURT is the Motion to Dismiss for Failure to State a Claim **[Doc. No. 8]**, filed by the Defendant, Entergy Mississippi, LLC ("EML") under the auspices of Federal Rule of Civil Procedure 12(b)(6)[1]. Plaintiff Blake Lewis ("Lewis") opposes the motion [Doc. No. 25], and EML has filed a rebuttal [Doc. No. 20]. This Court, having reviewed the parties' submissions and the applicable law, and being otherwise fully advised in the premises, finds as follows:

## I.    BACKGROUND

### A. Factual History

Plaintiff Blake Lewis, a white male, worked as a Journeyman Lineman for EML from January 2019 until his termination on November 12, 2024. [Doc. No. 1, ¶ 7]. In April 2024, Lewis engaged in a conversation with a black apprentice, Reggie Clark, regarding an alleged colloquially-used name for Brazilian nuts. *Id*. ¶8. Lewis mentioned that his grandfather referred to the nuts as "black toes." *Id*. ¶ 9]. Lewis alleges that Clark expressed no offense at the remark and that the two continued to work together without incident for months. *Id*. 10-18.

---

[1] Rule 12(b)(6) provides that, "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted."

The professional environment, says Lewis, changed abruptly on June 6, 2024. On the morning of June 6, 2024, Lewis, Clark, and Journeyman Brandon Dyess (white male) visited a law enforcement academy. *Id.* ¶ 11. During the visit, Dyess prompted another officer[2] friend to "playfully confront" Clark as a prank[3]. *Id.* ¶ 12. Lewis maintains that Clark was a "good sport" and was not bothered by the incident. *Id.* ¶ 14.

Later that same day, Lewis, Dyess, and Clark finished a job together and, upon completing their tasks, began to "release their clearance"[4]. *Id.* ¶ 17. While working, they discovered that Foreman Hunter Holiday and Journeyman Jeremy Polk, both white, had removed safety grounds without notifying the clearance holder, Dyess. *Id.* ¶ 18. Lewis alleges that this removal left the crew unprotected during hands-on work, constituting a "severe safety violation" that could have resulted in a fatality. *Id.* ¶¶ 19–20.

On June 10, 2024, Lewis and Dyess reported this violation to EML's Ethics Department and Safety Team. *Id.* ¶ 25. Although EML's investigation confirmed the safety breach, EML allegedly failed to discipline or terminate Holiday or Polk. *Id.* ¶¶ 27, 30; instead, claims Lewis, EML management supposedly shifted its focus to Lewis himself.

Shortly after the safety report, EML initiated an "ethics investigation" into Lewis's April 2024 comment and the June 6 academy prank. *Id.* ¶ 38; ECF No. 25-1.

Lewis alleges that in August 2024, Operations Coordinator Will Graves (a black male) and Holiday approached a new black apprentice, RJ Baptiste, and encouraged him to report any

---

[2] The race of this officer has not been made a part of the record before this court.

[3] This "prank" involved the officer confronting Clark and saying "what are you doing here?" *Id*.

[4] This Court has before it no further information regarding this phrase. From the submissions, this Court ascertains that releasing the clearance refers to de-energizing electrical equipment used on a job site.

offensive racial comments from the white linemen so they could "build a case" against them. *Id.* ¶¶ 32, 34–35.

EML terminated Lewis on November 12, 2024, citing racial discrimination against Clark as the reason. *Id.* ¶ 102. Lewis claims EML subsequently replaced him with a black male employee. *Id.* ¶ 104.

Lewis, by way of his Complaint, contends that the "ethics investigation" against him was a pretext to justify a predetermined termination. The goal, says Lewis, was to replace him with a black employee.

### B. Procedural History

Under Title VII, "white persons [are protected] upon the same standards as racial discrimination against nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976); *see also Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990) (affirming that Title VII protects white employees). Under the United States Supreme Court's recent guidance, majority-group plaintiffs are not required to meet a heightened evidentiary burden to establish a prima facie case. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025).

On February 1, 2025, Lewis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination by EML. [ECF No. 1-1]. The EEOC, without rendering a ruling, issued a Determination and Notice of Rights on February 7, 2025, dismissing the charge and notifying Lewis of his right to sue within ninety (90) days. [Doc

No. 1-2]. The EEOC may do so on request from the Complainant[5], or where backlog prevents EEOC from addressing a Complaint in 180 days[6].

Lewis timely filed his Complaint in this Court on May 5, 2025, asserting claims for race discrimination under Title VII[7] of the Civil Rights Act of 1964 and 42 U.S.C. § 1981[8], both federal enactments. Accordingly, this Court possesses federal question subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331[9].

EML now moves to dismiss Lewis's race discrimination claims under Title VII and Section 1981, arguing that Lewis has pleaded himself out of court. Specifically, EML contends that because Lewis alleges the "real" reason for his termination was retaliation for a safety report, he cannot maintain simultaneously that EML fired him because of his race.

---

[5] 29 C.F.R. § 1601.28(a)(1) ("When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued . . . the Commission shall promptly issue such notice . . . at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission[.]"

[6] 42 U.S.C. § 2000e-5(f)(1) (Stating that if the Commission dismisses a charge or hasn't filed a civil action within 180 days, it shall notify the person aggrieved, and "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge[.]")

[7] 42 U.S.C. § 2000e-2(a): "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

[8] 42 U.S.C. § 1981(a): "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." In the Fifth Circuit, [c]laims of racial discrimination brought under §1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Suggs v. Lowndes Cty. Sch. Dist.*, 804 F. Supp. 2d 510, 514 (N.D. Miss 2011)(citing *LaPierre v. Benson Nissan, Inc.*, 86 F. 3d 444, 448 n. 2 (5th Cir. 1996).

[9] 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4

## II.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) , a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim attains facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

When evaluating a motion to dismiss, this Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019); however, the Court does not credit conclusory allegations, unwarranted deductions, or legal conclusions masquerading as factual allegations when making its determination. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

## III.    DISCUSSION

Courts in the United States Court of Appeals for the Fifth Circuit analyze claims of race discrimination under Title VII and under §1981 using the same framework. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). Under this framework, dubbed the "*McDonnell Douglas* framework", a plaintiff asserting racial discrimination must show that: (1) he belongs to a protected group; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees outside the protected group. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Crucially, however, the United States Supreme Court has recognized that a plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss. *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 511 (2002). The Fifth Circuit recently has reaffirmed this, noting that "a magistrate judge erred by requiring a civil rights plaintiff to show a prima facie case of discrimination in his complaint." *Cicalese*, 924 F.3d at 766.  The Court, instead, must determine whether the plaintiff has alleged facts that make the claim of discrimination plausible. *Id.*

Lewis, in this Court's eye, has met this burden. He alleges that: he is white;  qualified for his role; terminated; and, significantly,  was replaced by a non-white/black individual. The Fifth Circuit recognizes that replacement by an individual outside the protected class serves as a traditional indicator of potential discrimination. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016).

In sum, Plaintiff alleges that "EML used his race as the 'motivating factor' for his termination by fabricating allegations of racial discrimination against him, despite evidence that the alleged victim, Reggie Clark (black male), denied feeling discriminated against during the "black toes" incident or at any time while working with Plaintiff." [ECF No. 25-1, p. 3].

EML's argument regarding Lewis's "alternative" theory of retaliation does not mandate dismissal at this stage. While Lewis's claims of retaliation and race discrimination may eventually reach a point of conflict, he may properly plead both at the outset of litigation. *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014) (explaining that under the federal rules, a plaintiff may plead inconsistent theories in the alternative).

Fed. R. Civ. P. 8(d)(2)[10] speaks to this approach:  a party may set out two or more statements of a claim alternatively or hypothetically, and if any one of them is sufficient, the pleading is sufficient. Lewis alleges that EML lacked a legitimate basis to fire him and chose to

---

[10] Fed. R. Civ. P. 8(d)(2): "Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

characterize his conduct as "racial discrimination" specifically to terminate a white employee and replace him with a black employee.

Finally, Lewis's allegations regarding the "ethics investigation" suggest that EML may have revived a stale, non-offensive comment from months prior seemingly to justify his termination. In this Court's eyes, such factual allegations, taken as true, nudge his claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570.

**IV.    CONCLUSION**

This Court finds that Lewis has provided enough factual content to satisfy the liberal pleading requirements of Fed. R. Civ. P. 8(a) and survive Defendant's Motion to Dismiss. This Court does not yet weigh whether Lewis's evidence can withstand summary judgment or succeed at trial.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Entergy Mississippi, LLC's Motion to Dismiss for Failure to State a Claim **[Doc. No. 8]** is **DENIED**.

**SO ORDERED this the 31st day of March, 2026.**

**/s/HENRY T. WINGATE**  
**UNITED STATES DISTRICT COURT JUDGE**